IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA     )
    )     08 CR 629
v.     )
    )     Judge Virginia M. Kendall
SHARIFF MILLER     )

## MEMORANDUM OPINION AND ORDER

On May 26, 2009, a jury convicted Defendant Shariff Miller ("Miller") of possession of

crack cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a), possession of a firearm

by a felon in violation of 18 U.S.C. § 922(g) and possession of a firearm in furtherance of a drug

trafficking crime in violation of 18 U.S.C. § 924(c). Miller now moves for a judgment of acquittal

or, alternatively, a new trial. For the reasons stated, Miller's Motion for Judgment of Acquittal or

New Trial is denied.

## BACKGROUND

On April 21, 2008, local police executed a search warrant of Miller's residence in Zion,

Illinois. During the search, officers seized over twenty five grams of crack cocaine, a .45 caliber

semi-automatic handgun bearing the serial number 101256, a Remington Rand .30-06 caliber rifle

bearing the serial number A7421511, a Sturm Ruger .44 caliber rifle bearing the serial number 102-

54161 and ammunition for the firearms. Before trial, Miller unsuccessfully moved to suppress the

firearms and guns, claiming that the affidavits submitted in conjunction with the application for a

search warrant did not establish probable cause. The Court also denied Miller's motion to disclose

the identity of the confidential informant who told law enforcement officers about the drugs and

weapons inside of Miller's home.

At trial, Miller claimed that the drugs and firearms belonged to other people living in his home. The Government introduced evidence that officers found the crack cocaine packaged for distribution on Miller's bed and inside of a shoe box that contained Miller's important personal documents, such as bank records and legal correspondence. With respect to the firearms, the Government introduced evidence that officers found the handgun between the mattress and the box spring of Miller's bed and that they found both rifles inside a closet in the bedroom next to Miller's. The Remington rifle had Miller's fingerprints on it and Miller admitted that he had handled it.

After deliberating, the jury found that Miller possessed more than five grams of crack cocaine with the intent to distribute, that Miller possessed the handgun and the Remington rifle in violation of 18 U.S.C. § 922(g) and that Miller possessed the handgun in furtherance of a drug trafficking crime. Miller now seeks a judgment of acquittal or a new trial under Fed. R. Civ. P. 29(c) and 33, claiming: 1) insufficient evidence to support the jury's verdict; 2) the Court erred when it denied Miller's Motion to Suppress the drugs and guns seized during the execution of the search warrant; 3) the Court erred when it denied Miller's Motion for Disclosure of Identity of Informant; 4) the Court erred when it denied Miller's *Batson* challenge during jury selection; 5) the Court erred when it allowed a witness to testify that she saw Miller possess a handgun in February 2008; 6) the Court erred when it admitted evidence of Miller's crack cocaine dealing; 7) the Court erred by giving two specific jury instructions.

## DISCUSSION

I.   Motion for Judgment of Acquittal

A motion for judgment of acquittal under Rule 29 challenges the sufficiency of the evidence against the defendant. *See* Fed. R. Crim. P. 29. Such a motion should be denied if, after viewing

the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hicks*, 368 F.3d 801, 804 (7th Cir. 2004). A conviction should not be overturned unless "the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (citing *United States v. Menting*, 166 F.3d 923, 928 (7th Cir. 1999)).

As a preliminary matter, each offense in the Superseding Indictment requires the common element of possession. For each offense, the "possession" element is satisfied by either actual or constructive possession. *See United States v. Morris*, — F.3d —, 2009 WL 2432002, at *3 (7th Cir. Aug. 10, 2009) (finding that same definition of "possession" applies to charges arising under 21 U.S.C. § 841(a)(1), 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(c)(1)). A person has actual possession over an item when he "knowingly has direct physical control over a thing, at a given time . . . ." *United States v. Kitchen*, 57 F.3d 516, 524 n.2 (7th Cir. 1995). In contrast, a person has constructive possession of an item even when he does not have immediate, physical control of it if he has ownership, dominion or control over the item. *See Morris*, 2009 WL 2432002, at *4 (citing *United States v. Irby*, 558 F.3d 651, 654 (7th Cir. 2009)). "Mere proximity to the drug [or] mere presence on the property where it is located . . . is insufficient to support a finding of possession." *Id.* (citing *United States v. DiNovo*, 523 F.2d 197, 201 (7th Cir. 1975)). However, when officers find contraband near the defendant's personal belongings, a jury may infer that the defendant had constructive possession based upon ownership or control. *See Irby*, 558 F.3d at 654 (defendant's state identification card, social security card and mail found in the same bedroom as marijuana and crack cocaine); *United States v. Castillo*, 406 F.3d 806, 813 (7th Cir. 2005) (constructive possession

based on exclusive control over apartment existed when mail, bills and service orders indicated that that the defendant lived in the basement and no other evidence suggested anyone else lived there); *Kitchen*, 57 F.3d at 519-21 (defendant had constructive possession of guns when officers found defendant's clothing, jewelry and mail in same room in his girlfriend's home as guns).

The Court now turns to the evidence presented for each charge against Miller.

A.      Count I - Possession of Crack Cocaine with the Intent to Distribute

Count I of the Superseding Indictment alleged that Miller knowingly and intentionally possessed five grams or more of mixtures containing cocaine base in the form of crack cocaine in violation of 21 U.S.C. § 841(a)(1). To sustain a conviction under 21 U.S.C. § 841(a), the Government must prove beyond a reasonable doubt that the defendant: 1) knowingly and intentionally possessed cocaine; 2) intended to distribute it; and 3) knew the substance was cocaine. *See United States v. Mendoza*, 510 F.3d 749, 752 (7th Cir. 2007). Miller only contends that the Government has not satisfied its burden of proving that the drugs belonged to him instead of someone else living in his house.

Here, officers found the crack cocaine on a bed and in a bedroom closet in Miller's house. The Government introduced evidence that Miller stayed in the bedroom where officers found the crack. Additionally, with respect to the crack cocaine found in the closet, when officers opened shoe boxes stored in the closet, they found individually wrapped rocks of crack cocaine placed inside of a Starburst candy bag and a small scale. Each individually wrapped rock of crack had a tag that indicated the quantity and price. In addition to the candy bag with the crack and the scale, the shoeboxes held Miller's personal documents, including legal correspondence, checkbooks, recent letters from his bank regarding his checking account balance and closing documents from the

purchase of his house. As in *Irby*, because officers found the drugs in a room that contained Miller's important personal documents, a reasonable jury could have inferred that Miller exercised ownership, dominion or control over all of the contents of the bedroom, including the crack cocaine found on the bed. Additionally, the officers found the candy bag containing more drugs and the scale in the same shoeboxes that Miller used to store those important documents. Therefore, a jury could have found that Miller knowingly and intentionally possessed the crack cocaine by exercising ownership, dominion or control over the drugs.

The Government also introduced evidence that Miller intended to distribute the crack cocaine. Each individually-wrapped crack rock had a tag that listed the quantity and price of that rock. Additionally, near the drugs, he had a small scale that he could use to weigh the drugs. Officers testified that the 25 grams of crack cocaine that they found in Miller's bedroom represented a distribution quantity because it was an amount more that 250 times a personal use amount. Chanda Borko ("Borko"), one of Miller's friends, testified that she overheard Miller speaking on the phone on April 21, 2008, the day that police executed the search warrant of Miller's home. During the conversation, she heard him tell the person on the other end of the phone to go to the side of the house "because traffic in front ain't cool," which could mean that Miller wanted to avoid having his customers attract police attention by coming to the front of the house to buy crack cocaine. Based on the price tags found on the seized crack, the scale, the distribution quantity of seized crack and Miller's phone conversation, a reasonable jury could have found that Miller intended to distribute the crack cocaine kept in his bedroom.

With respect to the knowledge element, besides the proximity of the drugs to Miller's personal documents, the Government introduced evidence that Miller knew what crack cocaine was

because of his previous experience dealing crack cocaine in 2000. Therefore, a reasonable jury could have concluded that Miller knew that the substance in his bedroom was crack cocaine. Because the Government introduced sufficient evidence to satisfy the elements of the charged offense, Miller is not entitled to a judgment of acquittal with respect to Count I of the Superseding Indictment.

B.      Count II - Possession of a Firearm by a Felon

Count II of the Superseding Indictment alleged that Miller possessed a handgun and two rifles in violation of 18 U.S.C. § 922(g). The jury convicted Miller of Count II, finding that he had possessed the handgun and the Remington rifle. To prove a violation of 18 U.S.C. § 922(g)(1), the Government must prove the following elements: 1) a prior felony conviction; 2) the defendant's possession of the firearm; and 3) the gun traveled across state lines before the defendant possessed it. *See United States v. Ortiz*, 474 F.3d 976, 982 (7th Cir. 2007).

Here, Miller stipulated that he had previously been convicted of a felony offense. With respect to the possession of the weapons, the Government introduced evidence that officers found the handgun in Miller's bedroom, between the mattress and box spring of his bed. A few feet away from the handgun, officers found shoe boxes containing Miller's important personal documents, such as legal correspondence, his checkbook, correspondence from his bank regarding his checking account and documents relating to the purchase of his residence. Additionally, Borko testified that in February 2008, approximately two months before the search of Miller's residence, she had observed Miller in possession of the same handgun that officers seized from his bedroom. Based on that evidence, a reasonable jury could have determined that Miller had the ability to exercise his dominion and control over the handgun.

With respect to the Remington rifle, the Government introduced evidence that Miller's fingerprints appeared on the weapon. Although Miller explained that he held the gun only briefly to inspect it while determining if he wanted to purchase the rifle, his admission that he held the rifle was sufficient for a jury to determine beyond a reasonable doubt that he possessed the Remington rifle. *See United States v. Matthews*, 520 F.3d 806, 810 (7th Cir. 2008) (finding that Congress enacted § 922 to prevent convicted felons from "willingly [coming] into contact with the firearms, taking them into [their] hands and inspecting them for the purpose of arranging a sale.").

Additionally, the Government introduced evidence that all three weapons seized from Miller's home traveled in interstate commerce. Based the serial numbers of the weapons, an ATF agent testified that each weapon was manufactured outside of the state of Illinois. Because officers seized the weapons inside of Illinois, the Government introduced sufficient evidence to prove that Miller possessed weapons that had traveled in interstate commerce. Accordingly, Miller is not entitled to a judgment of acquittal with respect to Count II of the Superseding Indictment.

C.    Count III - Possession of a Firearm During and In Furtherance of a Drug Trafficking Crime

In Count III of the Superseding Indictment, the Government charged Miller with using the handgun and both rifles in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). The jury convicted Miller of Count III, finding that he only used the handgun in furtherance of a drug trafficking crime. A conviction under 18 U.S.C. § 924(c) requires proof that a defendant: 1) possessed a gun; and 2) the possession was "in furtherance" of a drug trafficking crime. *See United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005). The possession of a firearm furthers a drug trafficking crime when the weapon advances, moves forward, promotes or facilitates the crime. *See id.* at 813-15. The mere presence of a weapon at the scene of a drug crime does not satisfy the "in

furtherance" element; "there must be a showing of some nexus between the firearm and the drug selling operation." *See Duran*, 407 F.3d at 840. For example, a weapon that provides a drug dealer, his inventory or his territory with protection furthers the drug trafficking crime while a wall-mounted antique gun or a secured, unloaded hunting rifle is innocent possession that does not further the drug trafficking crime. *See id.* To determine whether the possession of the firearm furthered the drug trafficking offense, courts may consider "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.* (citation omitted).

As previously analyzed, the Government presented sufficient evidence for a reasonable jury to find that Miller had committed a drug trafficking crime and possessed the handgun as charged in Counts I and II of the Superseding Indictment. The evidence also showed that officers found the handgun cocked and loaded in between Miller's mattress and box spring, inches below the crack cocaine found on the bed and feet away from the crack cocaine found in the shoebox in his closet. An ATF agent testified that drug dealers commonly use handguns, as opposed to rifles or shotguns, to protect themselves, their drug stash or their profits. Therefore, based on the evidence that Miller kept the handgun, a type of gun commonly used in conjunction with drug trafficking, cocked and loaded in very close proximity to the drugs and hidden in an accessible place, a reasonable jury could have determined that Miller possessed the handgun in furtherance of a drug trafficking crime.

II.      Motion for New Trial

A motion for a new trial under Rule 33(a) should be granted only if required "by the interests of justice." Fed. R. Crim. P. 33(a). Such a motion should be granted sparingly and is only

appropriate if "substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). A defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict. *See United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996). In support of his Motion for a New Trial, Miller claims that the Court erred when it: 1) denied Miller's Motion to Suppress; 2) denied Miller's Motion for Disclosure of Identity of Informant; 3) denied Miller's *Batson* challenge; 4) permitted a witness to testify that she had seen Miller in February 2008 in possession of the handgun seized from Miller's residence; 5) admitted evidence of Miller's previous crack cocaine dealing; and 6) gave two specific jury instructions.

A.      Miller's Motion to Suppress

Before the trial, Miller moved to suppress the drugs and guns seized during the execution of a search warrant at his residence on the basis that the application for the search warrant did not establish probable cause. The Court denied the Motion to Suppress and the subsequent Motion to Reconsider.

On April 21, 2008, North Chicago Detective Louis Rivera ("Rivera") requested a search warrant for Miller and his residence in Zion, Illinois. Rivera and a confidential informant identified only as "J. Doe" ("CI") appeared before a Lake County Associate Circuit Judge to sign and swear to a Complaint for Search Warrant ("Complaint"). The Complaint indicated that Rivera learned of Miller possessing cocaine after a conversation with the CI. The Complaint further indicated that within the past 72 hours, the CI observed "4 larger plastic bags containing several smaller plastic baggies each with an amount of a white rock-like substance" when he was inside Miller's residence. The CI also stated that he had seen cocaine over 100 times and he believed that the substance he saw

inside of Miller's residence was cocaine because the substance was consistent with the look, packaging and texture of cocaine. The CI added that he had seen cocaine inside of Miller's residence on a few occasions within the last month. Rivera and the CI appeared in person before the judge who evaluated the Complaint.

The Lake County Associate Circuit Judge issued a search warrant that authorized the search of Miller and his residence. The warrant also authorized the seizure of "cocaine, proof of residency or occupancy, paraphernalia associated with the use and sale of controlled substances, U.S. currency, notes, ledgers, property and financial records related to the use and sale of controlled substances." After executing the warrant, law enforcement officials seized marijuana, cocaine, ecstacy and three firearms found inside of Miller's residence.

The Fourth Amendment requires that probable cause must exist to justify the issuance of a search warrant. *See United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005). An affidavit submitted in support of an application for a search warrant establishes probable cause if the affidavit sets forth sufficient facts to cause a reasonable person to believe that a search will uncover contraband or evidence of a crime based on the totality of the circumstances. *See United States v. Sidwell*, 440 F.3d 865, 868 (7th Cir. 2006). In reviewing whether the facts sufficiently established probable cause to justify the issuance of a warrant, courts give "great deference to the conclusion of the judge who initially issued the warrant." *United States v. Garcia*, 528 F.3d 481, 485 (7th Cir. 2008); *see also United States v. McIntire*, 516 F.3d 576, 578 (7th Cir. 2008).

Here, Miller challenges the reliability and sufficiency of the information the CI provided during the warrant application process based on the lack of detail included in the sworn Complaint. To evaluate the reliability of an anonymous source's information, courts consider the personal

observations of the source, the degree of detail given in the affidavit, independent police corroboration of the information, the amount of time elapsed between the events and the application for the warrant and whether the informant appeared at the probable cause hearing. *See United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002); *United States v. Johnson*, 289 F.3d 1034, 1040 (7th Cir. 2002), *abrogated on other grounds*, *United States v. Vaughn*, 433 F.3d 917, 923 (7th Cir. 2006). No single factor is determinative and a strong showing in one factor may compensate for a deficiency in another factor. *See United States v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999). When an anonymous source's affidavit contains minimal detail, probable cause can be established if the affidavit includes information based on the source's recent first-hand observations, if the affidavit sets forth the basis of the source's knowledge and if the source appears before the judge making the probable cause determination. *See Garcia*, 528 F.3d at 486-87; *Johnson*, 289 F.3d at 1039-40.

In *Garcia*, the informant's affidavit did not contain many details. *See Garcia*, 528 F.3d at 486. Nonetheless, probable cause to issue the warrant existed when the informant's affidavit stated that the informant had observed a substance he believed to be cocaine packaged in a plastic baggie inside the apartment in question within the past 72 hours and the affidavit stated that he believed the substance was cocaine based on his own involvement in selling cocaine in the past. *See id.* Likewise, in *Johnson*, despite "somewhat cursory" facts provided in the source's affidavit, probable cause to issue the search warrant existed when the source's first-hand observation provided a direct link between the illegal activity observed and the place to be searched and the source appeared before the judge to swear to the affidavit. *See Johnson*, 289 F.3d at 1039-40.

Here, the CI's first-hand observations formed the basis of the facts included in the Complaint. The CI stated that he was inside of the residence within the past 72 hours and that he

had seen the baggies containing the rock-like substance. He further stated that he had familiarity with the look, packaging and texture of cocaine because he had seen cocaine over 100 times and that the rock-like substance inside the residence was consistent with the look, packaging and texture of cocaine. In *Garcia*, the CI's information was based on recent first-hand observations inside of the place to be searched and the CI established how he knew that the substance was cocaine.

Significantly, the judge who reviewed the search warrant had the opportunity to meet the CI in person and to judge his credibility prior to determining if probable cause existed to issue the search warrant. That appearance provided the judge with an opportunity to assess the CI's credibility and verify the accuracy of the CI's statements. The "presence of the CI and opportunity to be questioned are themselves indicia of reliability because they eliminate some of the ambiguity that accompanies an unknown hearsay declarant. The mere presence of the CI allows the issuing judge to confront the CI if necessary." *Johnson*, 289 F.3d at 1040. Because the Complaint contained the CI's very recent first-hand observations of the place to be searched, the CI's basis of knowledge that the rock-like substance was cocaine and the CI personally appeared before the judge making the probable cause determination, based on the totality of the circumstances, a reasonable person would have believed that a search of Miller's residence would have uncovered cocaine. Therefore, probable cause to search the residence existed when the judge issued the search warrant.

Even if probable cause to issue the search warrant did not exist, evidence seized pursuant to a subsequently invalidated search warrant is not suppressed if the officers relied in good faith on the warrant. *See United States v. Leon*, 468 U.S. 897, 924 (1984). An officer's decision to obtain a warrant is prima facie evidence that he relied on the warrant in good faith. *See United States v.*

*Otero*, 495 F.3d 393, 398 (7th Cir. 2007). A defendant may rebut this presumption by showing that the issuing judge abandoned his detached and neutral role, that the officer was dishonest or reckless in preparing the affidavit, or the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable. *See id.* Because Rivera obtained a search warrant prior to searching Miller's residence, Miller must rebut the presumption that Rivera relied on the warrant in good faith. Miller claims that the search warrant was so lacking in probable cause that no officer could have relied on it.

When an affidavit sets forth a minimum indicia of illegal drug dealing in a residence, the officer may reasonably rely on the warrant to execute a search. *See Sidwell*, 440 F.3d at 870 (description of a specific apartment and drug paraphernalia outside of the apartment established, at a minimum, indicia of illegal drug dealing in that apartment). As set forth above, the Complaint established that the CI had personally observed a rock-like substance packaged inside baggies when he was inside of Miller's residence. Based on his experience with cocaine, the CI determined that the rock-like substance was consistent with the look, packaging and texture of cocaine. Because the facts set forth in the Complaint established a minimum indicia of illegal drug activity occurring inside the residence, a reasonable officer could have believed that probable cause to search the residence for cocaine existed. Therefore, even if probable cause did not justify the issuance of the warrant, because Miller has not rebutted the presumption that the officers relied on the warrant in good faith, he would not have been entitled to suppress the evidence seized during the execution of the warrant. Accordingly, the Court did not err when it denied Miller's Motion to Suppress.

B.      Miller's Motion for Disclosure of the Informant's Identity

Before the trial, the Court denied Miller's motion to compel the Government to disclose the

identity of the CI.  "The government has a limited privilege to withhold the identity of a confidential informant from a criminal defendant."  *United States v. Jefferson*, 252 F.3d 937, 940 (7th Cir. 2001) (citing *Rovario v. United States*, 353 U.S. 53, 60 (1957)).  This privilege encourages individuals to come forward with information by preserving their anonymity.  *See Rovario*, 353 U.S. at 59.  At the same time, courts must balance the interest in maintaining an informant's anonymity "against the [defendant's] right to prepare his defense."  *Id.* at 62.  Under this balancing test, the privilege will not apply "[w]here the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of the accused."  *Id.* at 60-61.  The defendant has the burden of establishing that disclosure is relevant and helpful to the defense or essential to the fair determination of a case.  *See Jefferson*, 252 F.3d at 941.  However, "[w]hen the confidential informant is a mere 'tipster'–someone whose only role was to provide the police with relevant information that served as the foundation for obtaining a search warrant–rather than a 'transactional witness' who participated in the crime charged against the defendant or witnessed the event in question, disclosure will not be required."  *United States v. Harris*, 531 F.3d 507, 515 (7th Cir. 2008) (citations omitted).

Here, the record does not suggest that the CI had any involvement beyond providing the information that led to the acquisition of the search warrant.  As in *Jefferson*, it does not appear that the CI was physically present during the execution of the search warrant or would have any other information that would lead to classifying him as a "transactional witness."  Therefore, the CI is a mere tipster not subject to disclosure under *Rovario*.  Accordingly, the Court did not err when it denied Miller's Motion for Disclosure of Identity of Informant.

C.      Miller's *Batson* Challenge

During jury selection, Miller objected to the Government's use of a peremptory strike to strike Juror No. 17, Maria Hill ("Hill"), the only Black person in the venire. After the Court found that Miller established a prima facie case that the Government struck Hill because of her race, the Government offered three reasons for striking her: 1) she works in a job where she does clerical work in support of an offender reentry program that assists inmates transition into life after imprisonment; 2) she had been arrested in the past; and 3) she had fallen asleep in the jury box while the Court questioned other potential jurors. The Court found the Government's reasons for striking Hill to be valid, race-neutral explanations. Miller now claims that the Court erroneously denied his *Batson* challenge with respect to Hill.

The Government may not use peremptory challenges to exclude jurors because of their race. *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986). Once a defendant raises a *Batson* challenge, district courts must engage in the following three step burden-shifting analysis: 1) the defendant must establish a prima facie case that the Government struck a potential juror because of his or her race; 2) the Government then assumes the burden of articulating a race-neutral explanation for the decision to strike the juror; and 3) the Court must determine whether the objecting party has carried its burden of establishing that the proffered reasons are mere pretext for purposeful discrimination. *See United States v. McMath*, 559 F.3d 657, 663 (7th Cir. 2009); *United States v. Cooper*, 19 F.3d 1154, 1158 (7th Cir. 1994). In determining whether the defendant has carried its burden of establishing purposeful discrimination, the Court's task is to evaluate whether the Government's race-neutral explanation is credible by assessing "how reasonable, or how improbable, the prosecutor's explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *United States v. Hendrix*, 509 F.3d 362, 371 (7th Cir. 2007) (citation omitted).

Here, Miller established a *prima facie* case of racial discrimination by pointing out that the Government struck the only Black member of the venire. *See id.* at 370 (striking the only two Black members of the venire was sufficient evidence to permit an inference of discrimination). To satisfy its burden of articulating a race-neutral reason for its decision to strike Hill, the Government offered three reasons. With respect to the first reason, the Government stated that Hill's work for an offender reentry program could cause her to be sympathetic to the defendant. Additionally, the Government noted that Hill disclosed a previous arrest stemming from an altercation that she had with a coworker when she held a different job. Because all other potential jurors that had disclosed arrests during voir dire had been stricken for cause, the Government claimed that its choice to strike Hill was consistent with the other strikes. The Government added that it also chose to strike Hill because it observed her sleeping in the jury box while the Court questioned other prospective jurors.

The Court notes that it also observed Hill sleeping in the jury box during the voir dire process. Striking potential jurors for sleeping or other inattentive behavior during the jury selection process is a valid use of a peremptory strike. *See United States v. Jones*, 224 F.3d 621, 624-25 (7th Cir. 2000) (Government articulated a legitimate race-neutral reason for striking a juror who slept in jury box during voir dire); *United States v. Walton*, 217 F.3d 443, 448 (7th Cir. 2000) ("If anything is required of a juror aside from impartiality, it is the willingness and ability to pay attention and retain what is seen and heard during the trial."). Because the Court observed Hill sleeping while it questioned other prospective jurors, it finds the Government's race-neutral reason for striking her to be credible.

With respect to the arrest, Hill disclosed that police arrested her at work after her supervisor reported that an altercation broke out between Hill and another worker. Eventually, the prosecution

dropped the disorderly conduct charges against her when a complaining witness did not appear in court. The Court struck two other members of the venire that disclosed previous arrests for cause, although not because of those arrests. The Government stated that it chose to strike Hill in part because she was the only remaining member of the venire that had been arrested in the past and that it was concerned that her experience could leave her biased against law enforcement. Because striking Hill removed the only remaining potential juror that had been arrested in the past, the Court finds the Government's explanation with respect to Hill's arrest to be credible and race-neutral.

Additionally, the Government explained that it opted to strike Hill because of her job. Although she performs an administrative role in the City of Chicago's Department of Mental Health offender reentry program, she stated that she has contact with former prisoners when she processes them before their counseling sessions. Based on that contact, it was reasonable for the Government to believe that Hill would have felt sympathetic towards a criminal defendant. Because the Government has offered three credible, race-neutral reasons for striking Hill, Miller's *Batson* challenge is denied.

D.       Evidence of Miller's Previous Possession of the Handgun

During the trial, the Court admitted evidence that Miller previously possessed the .45 caliber handgun at issue over Miller's objection. Borko testified that in February, 2008, she had seen Miller in possession of the same handgun that officers seized from Miller's house. Specifically, she testified that she saw him remove the .45 caliber handgun from his pocket and place it on a table in front of her. After viewing the seized handgun in the courtroom, Borko testified that she was "100 percent sure" that the seized gun was the same gun that Miller placed on a table in front of her in February 2008 because the seized gun matched the "dark, rusty gray color" of the gun she had seen

Miller possess. The Government offered the evidence to prove that Miller possessed the handgun after he had been previously convicted of a felony and to prove that he exercised ownership, dominion or control over the seized gun. Miller claims that the Court should have excluded Borko's testimony regarding Miller's February 2008 possession of the gun under Fed. R. Evid. 404(b).

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). Evidence of other acts that are inextricably intertwined with the events surrounding the charged crime is not evidence of "other acts" within the meaning of Rule 404(b). *See United States v. Ramirez*, 45 F.3d 1096, 1102 (7th Cir. 1995); *United States v. Roberts*, 933 F.2d 517, 520 (7th cir. 1991) (citing *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989)). A prior act is inextricably intertwined with the charged conduct if the act tends to prove an element of the charged offense. *See United States v. Ojomo*, 332 F.3d 485, 489 (7th Cir. 2003).

As previously discussed, one of the elements of a violation of 18 U.S.C. § 922(g)(1) or 18 U.S.C. § 924(c) is the defendant's possession of a firearm. *See* Part I., *supra*. To establish the "possession" element, the Government may introduce evidence that the defendant had the ability to exercise dominion and control over an object. *See Morris*, 2009 WL 2432002, at *4. In cases where possession of a firearm is a required element of the offense, a defendant's prior possession of the gun at issue is inextricably intertwined with the charged conduct because it is probative of the defendant's ability to exercise his dominion and control over that particular gun. *See United States v. Lloyd*, 71 F.3d 1256, 1267 (possession of rifle during days leading up to arrest for being a felon

in possession of a firearm admitted to show defendant's dominion and control over the firearm in question); *see also United States v. Hite*, 364 F.3d 874, 880-82 (7th Cir. 2004), *vacated on other grounds*, 543 U.S. 1103 (2005) (testimony of defendant's ex-girlfriend that she had seen defendant in possession of the firearms in question before the date of his indictment inextricably intertwined with charged conduct and therefore admissible as evidence of defendant's ability to exercise dominion and control over firearms in question); *United States v. Muhammad*, 928 F.2d 1461, 1468 (7th Cir. 1991) (evidence concerning incident where defendant shot the gun at issue was not Rule 404(b) evidence because it was probative of his possession of the gun at issue).

Here, Borko's testimony regarding Miller's previous possession of the handgun at issue was inextricably intertwined with the charged conduct because it related to Miller's ability to exercise dominion and control over the specific handgun charged in Counts II and III of the Superseding Indictment. Therefore, the Court did not err when it admitted Borko's testimony regarding Miller's possession of the .45 caliber handgun in February 2008.

E.      Evidence of Miller's Previous Drug Distribution

During the trial, the Court permitted the Government to introduce evidence relating to Miller's previous distribution of crack cocaine in 2000 under Rule 404(b). Specifically, the Government presented testimony from the police officer who seized Miller's drugs in the previous case and from the officer who took Miller's post-arrest statement. The officer who seized the drugs from the earlier case testified regarding the packaging of Miller's drugs in 2000, stating that the police seized four bags from Miller that each contained ten smaller bags of crack cocaine wrapped for distribution. That packaging is consistent with the packaging of the drugs that police seized from Miller's bedroom on April 21, 2008. Following his arrest, Miller admitted to another officer that

the drugs were his and that he intended to distribute the crack cocaine.  While the Government

presented the underlying details of Miller's 2000 conviction, it did not seek to introduce evidence

of the conviction itself until Miller testified.  Miller claims that the Court erred in admitting the

evidence relating to Miller's previous drug dealing because he did not put his knowledge or intent

at issue because his theory of the case was that the drugs did not belong to him.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a

person in order to show action in conformity therewith.  It may, however, be admissible for other

purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or

absence of mistake or accident . . . ."  Fed. R. Evid. 404(b).  To determine whether evidence of prior

convictions or bad acts is admissible, courts must evaluate if the proffered evidence: 1) establishes

a matter in issue other than the defendant's propensity to commit the crime charged; 2) is similar

enough and close enough in time to be relevant; 3) is sufficient to support a jury finding that the

defendant actually committed the similar act; and 4) has probative value that is not substantially

outweighed by the danger of unfair prejudice.  *See United States v. Emerson*, 501 F.3d 804, 812 (7th

Cir. 2007).

To sustain a conviction under 21 U.S.C. § 841(a)(1), the Government must prove the element

of intent beyond a reasonable doubt.  *See United States v. Chavis*, 429 F.3d 662, 667 (7th Cir. 2005).

Possession of controlled substances with the intent to distribute is a specific intent crime.  *See*

*United States v. Best*, 250 F.3d 1084, 1091 (7th Cir. 2001).  When the Government charges

defendant with a specific intent crime, it may prove the element of intent through evidence of other

acts.  *See id.*; *see also United States v. Jones*, 389 F.3d 753, 756 (7th Cir. 2004).  However, to avoid

the impermissible use of the prior act to show propensity to commit the charged crime, "the

government must affirmatively show why a particular prior conviction tends to show the more forward-looking fact of purpose, design, or volition to commit the new crime . . . [A] prior conviction shown to have some additional relevance can qualify as intent evidence." *Chavis*, 429 F.3d at 668 (citation omitted). When a defendant charged with possession of a controlled substance with the intent to distribute denies ownership of the drugs at issue, he places his intent at issue. *See United States v. Perkins*, 548 F.3d 510, 514 (7th Cir. 2008) ("By stating that the crack cocaine found in his residence could be his girlfriend's, [the defendant] impliedly denies his intent to distribute the drug."); *United States v. Hearn*, 534 F.3d 706, 712 (7th Cir. 2008) (defendant's prior conviction for drug distribution was probative of his intent to distribute crack when he claimed that the seized drugs did not belong to him); *United States v. Hurn*, 496 F.3d 784, 787 (7th Cir. 2007) ("A prior conviction is also relevant [on the issue of intent] when the defendant concedes being in the vicinity of drug activity but argues that he was a 'clueless bystander.'"). Here, the police found the crack cocaine in Miller's bedroom, but he claimed that the drugs belonged to someone else. Therefore, under *Perkins*, *Hearn* and *Hurn*, he has placed his intent to distribute the drugs at issue by denying ownership. Based on Miller's "innocent bystander" theory of defense coupled with the Government's burden to prove Miller's specific intent, the evidence relating to his 2000 conviction for possession of crack cocaine with intent to distribute is probative of his intent with respect to the charged offense, and not mere propensity evidence. *See Chavis*, 429 F.3d at 668 (citing *United States v. Macedo*, 406 F.3d, 778, 793 (7th Cir. 2005)).

Under the second prong of the Rule 404(b) test, the prior act must be similar enough and close enough in time to be relevant to the matter in issue. *See Chavis*, 429 F.3d at 667. The "similar enough" offense test is satisfied when the prior act is identical to the charged offense. *See United*

*States v. Best*, 250 F.3d 1084, 1090 (7th Cir. 2001). A prior act that occurred approximately nine to ten years ago satisfies the "close enough in time" test. *See Hurn*, 496 F.3d at 788 (Defendant's "ten-year-old conviction was not too remote to be used at trial."); *United States v. Tringali*, 71 F.3d 1375, 1379 (7th Cir. 1995) (nine year old conviction used to show knowledge and intent to distribute). Here, Miller currently faces charges for identical conduct that led to the 2000 conviction. The proffered evidence shows that the drugs seized in connection with this case were packaged in an identical manner to the drugs seized in connection with the previous case. Additionally, because the conviction occurred within the last ten years, it is close enough in time to be relevant to his intent to distribute crack cocaine.

Evidence of the prior act satisfies the third prong of the Rule 404(b) test when the defendant was actually convicted of the prior act. *See Tringali*, 71 F.3d at 1379. Additionally, the testimony of law enforcement officers who witnessed the prior act can sufficiently establish the occurrence of prior events. *See Best*, 250 F.3d at 1092. Miller's 2000 conviction itself along with the testimony of police officers who witnessed the events that gave rise to that conviction supports a finding that he actually committed the prior acts.

Finally, the probative value of the prior acts must not be outweighed by the danger of unfair prejudice. *See Hurn*, 496 F.3d at 788. When the defendant charged with the possession of a controlled substance with intent to distribute admits being near the drugs but claims to be an innocent bystander, the prior act or conviction is highly probative of intent to distribute in the charged offense. *See id.* ("[T]he conviction was highly probative because it went directly to [the defendant's] intent to distribute cocaine, which he 'made an issue in the case by denying any connection to the drugs.'") (quoting *Chavis*, 429 F.3d at 699). While the risk of unfair prejudice

exists, a court may mitigate that risk by giving the jury appropriate limiting instructions. *See Perkins*, 548 F.3d at 515; *Hearn*, 534 F.3d at 713. Here, the evidence relating to Miller's 2000 conviction was probative of his intent to distribute with respect to the charged offense, particularly in light of the identical packaging of the crack cocaine. Additionally, the Court instructed the jury that it may only consider evidence of the 2000 conviction as evidence of his intent to distribute the seized crack cocaine, and not as evidence of his propensity to commit the charged offense.

Because evidence of Miller's drug dealing in 2000 was relevant to his intent to distribute the seized crack cocaine, the 2000 drug distribution was sufficiently similar and close in time to be relevant to his intent, sufficient evidence existed to conclude that Miller actually committed the acts giving rise to the 2000 conviction and the probative value of the prior act was not outweighed by the danger of unfair prejudice, the evidence was admissible under Rule 404(b). Accordingly, the Court did not err when it allowed the Government to introduce evidence relating to Miller's previous drug distribution.

F.      Jury Instructions

Finally, Miller claims that the Court erred in giving two of the jury instructions, Instruction No. 20 and Instruction No. 28.

Instruction No. 20 stated, "Crack cocaine is the street name for cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." Miller claims that the information contained in that instruction was only appropriate as the subject of expert testimony, not as a jury instruction. Jury instructions must be accurate statements of the law that are supported by the facts in the case. *See United States v. Mancillas*, 183 F.3d 682, 707 (7th Cir. 1999). Here, narcotics officers and a forensic chemist each

testified that the substance found in Miller's bedroom was crack cocaine. Therefore, an instruction regarding the definition of crack cocaine was appropriate based upon the facts of the case. Additionally, the instruction was an accurate statement of the law because it exactly matches the definition under Seventh Circuit precedent. *See United States v. Lake*, 500 F.3d 629, 634 (7th Cir. 2007) ("crack is 'the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.'") (quoting *United States v. Edwards*, 397 F.3d 570, 572 (7th Cir. 2005)). Because Instruction No. 20 was an accurate statement of the law that was supported by the facts of the case, the Court did not err in giving it to the jury.

Instruction No. 28 stated, "Possession exists when an individual holds an object, in this case a firearm, even if the handling is only momentary, as long as the individual does so knowingly and intends to handle the object." The Court gave Instruction No. 28 based upon the holding in *United States v. Matthews*, 520 F.3d 806, 811 (7th Cir. 2008) (finding that for purposes of 18 U.S.C. § 922(g)(1), momentary possession satisfies the "possession" element of the offense). Miller objects to Instruction No. 28, claiming that the Seventh Circuit wrongly decided *Matthews*.[1] Even if the Court agreed with Miller's position, the Court would be powerless to grant Miller a new trial. *See Gacy v. Welborn*, 994 F.2d 305, 310 (7th Cir. 1993) (in a hierarchical judiciary, district courts must apply the existing law of the circuit). Miller must voice his disagreement with *Matthews* on appeal.

---

[1] In his Motion for Judgment of Acquittal or New Trial, Miller also claimed that Instruction No. 28 should not have been applicable to Count III because *Matthews* only addressed "possession" for purposes of 18 U.S.C. § 922(g)(1), the charge in Count II. After the Government correctly pointed out that the Court gave the jury an oral limiting instruction that the "momentary possession" instruction applied only to Count II, Miller conceded that his "only objection [to Instruction No. 28] is that *United States v. Matthews*, 520 F.3d 806 (7th Cir. 2008) was wrongly decided." Miller Reply Br. at 2.

## CONCLUSION AND ORDER

For the reasons stated, Miller's Motion for Judgment of Acquittal or New Trial is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:   September 28, 2009