IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 08 CR 629 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| SHARIFF MILLER | ) | |

**MEMORANDUM OPINION AND ORDER**

On May 26, 2009, a jury convicted Defendant Shariff Miller ("Miller") of possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count I), possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) (Count II), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count III). In light of the Seventh Circuit's opinion in *Buchmeier v. United States*, 581 F.3d 561 (7th Cir. 2009) (en banc), Miller moves to vacate the jury's verdict as to Count II, to dismiss the indictment, and objects to the finding in the Presentence Investigation Report (the "PSR") that he is a career offender under §4B1.1 of the United States Sentencing Guidelines (the "Guidelines"). For the reasons stated, Miller's Motions are denied and his Objection is overruled.

**BACKGROUND**

**I.     The Investigation, Indictment, and Trial**

On April 21, 2008, local police executed a search warrant of Miller's residence in Zion, Illinois. During the search, officers seized over twenty-five grams of crack cocaine, a .45 caliber semi-automatic handgun, a Remington Rand .30-06 caliber rifle, a Sturm Ruger .44 caliber rifle, and ammunition for the firearms. On April 21, 2009, a federal grand jury returned a Superseding

1

Indictment[1] charging Miller with possession with intent to distribute five grams or more of crack cocaine, possession of the three firearms as a felon, and possession of the firearms in furtherance of a drug trafficking crime. Specifically as to the felon-in-possession charge, the Superseding Indictment charged that Miller had been previously "convicted of a crime punishable by imprisonment for a term exceeding one year." (R. 50 at 2.) The Government admits, however, that the grand jury specifically heard about Miller's 2000 Lake County, Illinois drug distribution conviction ("the Illinois conviction"). (Tr. of May 13, 2010 Status Conference at 17:9-13.) After deliberating, the jury found that Miller possessed five grams or more of crack cocaine with the intent to distribute, that he possessed the handgun and the Remington rifle in violation of 18 U.S.C. § 922(g)(1), and that he possessed the handgun in furtherance of a drug trafficking crime. The Court denied Miller's Motion for Judgment of Acquittal or New Trial on September 29, 2009. (*See* R. 98.)

## II.     Post-Trial Proceedings

On September 10, 2009, the Seventh Circuit issued its decision in *Buchmeier*. In *Buchmeier*, the Seventh Circuit held that the petitioner's notice of restoration of rights from the State of Illinois for his past convictions rendered those convictions unusable for purposes of enhancing a subsequent federal sentence. 581 F.3d at 567. Believing that after *Buchmeier* his Illinois conviction could no longer support his felon-in-possession conviction, Miller moved to vacate the jury's verdict as to the felon-in-possession count, to dismiss the indictment, and objected to his status as a career offender. Miller stated in an affidavit that he received the same notice of restoration of rights from the Illinois Department of Corrections ("IDOC") upon his completion of parole for his Illinois conviction that

---

[1] On May 11, 2009, the Court granted the Government's Motion to Amend the Superseding Indictment to remove superfluous language from Count III. (See R. 60, R. 56.)

2

the petitioner in *Buchmeier* received and Miller attached to his affidavit an example of what he claimed is a notice identical to the one he received. (R. 112, Mot. to Dismiss Indictment, Ex. 1.)

The Government conceded that after *Buchmeier*, Miller's Illinois conviction no longer qualifies as a prior felony conviction under § 921(a)(20) and thus cannot support his felon-in-possession conviction. It pointed out, however, that it need not rely on the Illinois conviction because Miller's prior felony conviction for drug distribution in Kenosha County, Wisconsin in 1997 (the "Wisconsin conviction") can serve as the predicate felony in this case. In response, Miller filed a Supplemental Sentencing Memorandum in which he argued that his Wisconsin conviction is also unuseable after *Buchmeier*. This time, Miller attached two affidavits: one in which he stated that he received a "Discharge Certificate" from the State of Wisconsin Department of Corrections ("WDOC") that restored his "all" of his rights and that did not inform him that he could not possess a firearm, and one in which he stated that his IDOC restoration of rights notice "led [him] to believe" that his rights in Wisconsin had also been restored. (*Id.*, Exs. 3, 4.) In its Response to Miller's Supplementary Sentencing Memorandum, the Government attached an affidavit in which James B. Pritchard ("Pritchard"), Forms Officer for WDOC, stated that the form Miller would have received explicitly forbid the use or possession of firearms without a pardon from the Governor. (R. 121, Resp. to Def. Supp. Sent. Memo., Ex. 1.) The Government also attached a sample copy of the document Pritchard said Miller would have received. (*Id.*) In light of the conflicting views about what version of "Discharge Certificate" Miller received from WDOC upon completion of his parole and what rights it restored, the Court granted Miller's Oral Motion for an evidentiary hearing. (Tr. of May 13, 2010 Status Conference at 23:23-25, 24:1-6.)

3

### III. The Evidentiary Hearing

The Court held an evidentiary hearing on July 19, 2010. At the hearing, Miller testified that he has two prior convictions for distribution of illegal substances—one in Illinois and one in Wisconsin. He testified that he was convicted of the Wisconsin offense in 1997 and was sentenced to three years in prison. Miller stated that he served twenty-five months in prison and was then released on parole. In 2000, while he was on parole for the Wisconsin offense, Miller testified that he committed the Illinois offense, served eighteen months of his four-year sentence, and was released from parole in August of 2001. Miller stated that because he had violated his Wisconsin parole by committing the Illinois offense, Miller was taken back to Wisconsin to finish his term of parole there.

Miller testified that in August of 2002, he was discharged from his Wisconsin parole at the Milwaukee Detention Center. Upon his discharge, Miller stated that he received a discharge paper that told him that his judgment was complete and that his rights were restored. Although Miller had stated in an affidavit that the WDOC discharge paper restored "all" of his rights, Miller testified at the hearing that although he could not remember exactly what the discharge paper said, he does remember that it restored his right to vote. He testified that he also remembers that the discharge paper did not mention anything about the use or possession of a firearm. Miller's attorney introduced two example WDOC discharge papers (Exhibits A and B), both of which Miller denied receiving when he was discharged in Wisconsin.

Miller also testified that in June of 2003, after he was discharged from his Illinois parole, he received another discharge paper, this time from IDOC. Miller's attorney introduced an example IDOC discharge paper (Exhibit C), which restored the right to hold office and restored any state

4

licenses. Exhibit C was silent as to the right to possess firearms. Miller stated that while Exhibit C was similar to the discharge paper he received, his discharge paper also restored the right to vote. Like Exhibit C, Miller testified, his discharge paper did not say anything about possession of guns. Miller further testified that after he received the restoration of rights notice from Illinois, he believed it restored his rights generally, not just in Illinois. Miller testified that he does not have the documents he received from either Wisconsin or Illinois.

The Government then called Pritchard to the stand. Pritchard testified that he has worked at WDOC since 1990 and has been its Forms Officer since about 2000. Pritchard testified that part of his duties as Forms Officer are to create and revise WDOC forms. Pritchard stated that he also keeps a history folder on each form WDOC has used, including its discharge forms. Pritchard testified that he also keeps a WDOC history folder on each form, which contains every version of that particular form, information about how it was created, and any procedures and policies that go along with it.

Pritchard testified that in 2002, when Miller received his discharge form, WDOC used two different discharge forms, Exhibits A and B. According to Pritchard, WDOC employees would give Exhibit A to people who still have undischarged charges pending, whereas Exhibit B was given to people who had satisfied all the charges against them. Pritchard testified that in 2002, if a person had satisfied all the charges against him and was being discharged directly from a Wisconsin institution, he would receive Exhibit B. Pritchard stated that Exhibit B was used from March of 1995 until 2005, and pointed out that the form specifically states that the right to use or possess a firearm is not restored. According to Pritchard, this language was added to an earlier version of the form in 1988.

5

Pritchard testified that because WDOC only keeps copies of inmate files—including discharge certificates sent to inmates—for five years, he has not been able to review Miller's file to determine what document Miller actually received. Finally, while Pritchard admitted that he personally does not have any control over what form a person actually receives upon his discharge, it would be a breach of WDOC rules for an individual detention center to use its own set of discharge forms.

## DISCUSSION

### I. Motion to Vacate the Verdict as to Count II

Miller first argues that, in light of *Buchmeier*, the Court must vacate the jury's verdict as to Count II. He argues that the restoration of right notice he received from WDOC restored at least his right to vote and did not inform him that he could not possess a firearm, thus rendering his Wisconsin conviction unusable for purposes of § 921(a)(20). Alternatively, Miller argues that his Illinois restoration of rights notice led him to believe that all of his rights in Wisconsin had been restored, just as they were in Illinois. Under Federal Rule of Criminal Procedure 33(a), the Court may vacate any judgment and grant the defendant a new trial under only if required "by the interests of justice." Such a motion should be granted sparingly and is only appropriate if "substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). A defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict. *See United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996). In addition, a court may order a new trial in a criminal case if the evidence "preponderates heavily against the verdict such that it would be a miscarriage of justice to let the verdict stand." *United States v. Swan*, 486 F.3d 260, 266 (7th Cir.

2007) (quoting *United States v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir. 1985)).

Miller's Motion to Vacate the Verdict, which he filed seven months after the jury's guilty verdict, is untimely.[2] Nevertheless, because the Government did not object to the timeliness of Miller's motion, and because Rule 33 is not jurisdictional, the Court will proceed to the merits of his argument. *See Eberhart v. United States*, 546 U.S. 12, 18-19 (2005) (holding that Rule 33 is a nonjurisdictional "claim-processing" rule and that, if the government "fail[s] to raise a defense of untimeliness until after the District Court ha[s] reached the merits, it forfeit[s] that defense").

Count II of the Superseding Indictment alleged that Miller, a convicted felon, possessed a handgun and two rifles in violation of 18 U.S.C. § 922(g)(1). The jury convicted Miller of Count II, finding that he had possessed the handgun and the Remington rifle. To prove a violation of 18 U.S.C. § 922(g)(1), the Government must prove the following elements: 1) a prior felony conviction; 2) the defendant's possession of the firearm; and 3) the gun traveled across state lines before the defendant possessed it. *See United States v. Ortiz*, 474 F.3d 976, 982 (7th Cir. 2007). The first element is the only one at issue here. The term prior felony conviction—or, more specifically, prior "crime punishable by imprisonment for a term exceeding one year"—is defined for the entire chapter in § 921(a)(20). Section 921(a)(20) excludes certain prior convictions that would otherwise qualify, including "[a]ny conviction . . . for which a person . . . has had civil rights restored . . . unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or

---

[2] A motion for a new trial for any reason other than newly discovered evidence must be filed within fourteen days after the verdict. Fed. R. Crim. P. 33(b)(2). Miller does not assert that there is any newly discovered evidence; his arguments are based on intervening case law, which does not qualify as "newly discovered evidence" under Rule 33. *See, e.g.*, *United States v. Patterson*, No. 04 CR 705-1, 2007 WL 1438658, at *18 (N.D. Ill. May 15, 2007) (Pallmeyer, J.) ("Defendant cites to no authority holding that a court decision falls within the "newly discovered evidence" rubric . . . ."); *United States v. Getty*, No 97 CR 835, 1999 WL 1024518, at *1 (N.D. Ill. Nov. 5, 1999) (Castillo, J.) (denying the defendant's untimely post-trial motion in which the defendant argued that an intervening Supreme Court decision rendered the court's jury instructions faulty).

receive firearms." 18 U.S.C. § 921(a)(20).

Under § 921(a)(20), the Court looks to the law of the jurisdiction in which the defendant obtained the prior conviction to determine: "(1) Has the defendant previously been convicted of a crime punishable by imprisonment exceeding one year; and (2) if so, has the jurisdiction of conviction . . . restored his civil rights?" *United States v. Wilson*, 437 F.3d 616, 620 (7th Cir. 2006). The civil rights that "matter" for these purposes are the rights to vote, to hold office, and to serve on juries. *See Buchmeier*, 581 F.3d at 564 (stating that "three civil rights matter: the right to vote, to hold office, and to serve on juries"); *Logan v. United States*, 552 U.S. 23, 28 (2007) (same). If the Court finds that the jurisdiction of conviction has restored the defendant's civil rights, the defendant's prior conviction "does not carry federal firearms disabilities" unless the "'restoration of civil rights expressly provides that the person may not . . . possess . . . firearms.'" *Buchmeier*, 581 F.3d at 564 (quoting 18 U.S.C. § 921(a)(20)).[3]

Here, Miller stipulated at trial that "at some time before April 21, 2008," he had been "convicted of a felony punishable by imprisonment for a term exceeding one year[,]" (R. 117, Comb. Resp. to Def. Mot., Exh. 1), which relieved the Government of its burden of establishing that Miller was a convicted felon. *See Ortiz*, 474 F.3d at 982. Miller's stipulation forbids him from arguing now that he did not have a qualifying predicate felony. *See, e.g.*, *United States v. Parker*, — F. Supp. 2d —, No. 08 CR 535, 2010 WL 3908514, at *1 n.3 (N.D. Ill. Oct. 4, 2010) (Bucklo, J.) (quoting *United States v. Dantzler*, No. 03-2358, slip. op. (7th Cir. Dec. 27, 2005)) ("'[E]ven if

---

[3] Although the Seventh Circuit's decision in *Buchmeier* was in the context of 18 U.S.C. § 924(e), the same basic definition of "crime punishable by imprisonment for a term exceeding one year" found in § 921(a)(20) applies to § 922(g)(1). *See Buchmeier*, 581 F.3d at 570 n.1 (Sykes, J., dissenting) (stating that "Buchmeier's argument has a much wider reach than he seems to appreciate").

8

[the defendant's prior] conviction ceased to qualify under § 921(a)(20) after he received the letter, the jury was still entitled to rely on his stipulation that he did have a qualifying predicate felony . . . . The stipulation alone supports the verdict on this element."); *see also United States v. Sandles*, 80 F.3d 1145, 1148 (7th Cir. 1996) (discussing stipulations in the context of a plea agreement and pointing out that, while they do not bind the court, "stipulations do bind the parties themselves. To hold anything else would be to reduce stipulations to mere inconsequential gestures.").

Even if Miller had not stipulated to a predicate felony conviction, the Court finds that it is more likely than not that the restoration of rights notice Miller received from the WDOC conformed to § 921(a)(20). While neither Miller nor WDOC has a copy of the restoration of rights notice Miller actually received, Pritchard testified that the document that Miller would have received upon his discharge in 2002—Exhibit B—restored Miller's right to vote and serve on juries, but specifically stated that his right to use or possess firearms was not restored. Pritchard further testified that WDOC employees, whether in Madison, Wisconsin or at the Milwaukee Detention Center, were required to issue this form to inmates in Miller's position and were not allowed to alter the forms. Despite Miller's statement that he received a different restoration of rights notice, the Court finds Pritchard's testimony credible, concludes that Miller's Wisconsin conviction does qualify as a "crime punishable by imprisonment for a term exceeding one year," and therefore can support his conviction under § 922(g)(1).

As to Miller's argument that his Illinois restoration of rights notice "mousetrapped" him into believing that his right to possess guns in Wisconsin were restored, the notice Miller received from IDOC "did not—indeed, could not—have any impact" on his prior conviction in Wisconsin. *See, e.g., United States v. Hester*, No. 08 CR 848, 2010 WL 2639807, at * 4 (N.D. Ill. June 29, 2010)

9

(Dow, J.) (holding that even if the defendant received a notice from Illinois restoring his civil rights in Illinois, that notice does not impact his prior conviction in Georgia). Whether the defendant is a convicted felon for purposes of § 922(g)(1) is a determination governed by the law of the convicting jurisdiction. *See* 18 U.S.C. § 921(a)(20) ("What constitutes a conviction . . . shall be determined in accordance with the law of the jurisdiction in which the proceedings were held."); *Beecham v. United States*, 511 U.S. 368, 371 (1994) (citation and marks omitted) (holding that because "[a]sking whether a person has had civil rights restored is . . . just one step in determining whether something should be considered a conviction[, that] determination is governed by the law of the convicting jurisdiction."). Thus, only Wisconsin—not Illinois—can restore Miller's civil rights as to his Wisconsin conviction. *Beecham*, 511 U.S. at 374 (concluding that the petitioners, who had prior federal convictions, could "take advantage of § 921(a)(20) only if they have had their civil rights restored under federal law"); *United States v. Schnell*, 353 Fed. App'x 12, 15 (7th Cir. 2009) ("Only the jurisdiction that obtained a conviction may forgive the conviction for purposes of § 921(a)(20) . . . ."); *see also, e.g.*, *United States v. Lowe*, 50 F.3d 604, 606-07 (8th Cir. 1995) ("Only the convicting jurisdiction can restore civil rights to a convicted felon for purposes of section 921(a)(20)."); *United States v. Eaton*, 31 F.3d 789, 792 (9th Cir. 1994) ("For purposes of § 921(a)(20), only the convicting state jurisdiction can restore civil rights to a convicted felon and remove the disability of a predicate state offense.") Accordingly, despite the fact that Miller received a defective Illinois notice, it has no impact on his prior Wisconsin conviction. For those reasons, the Court denies Miller's Motion to Vacate the Verdict as to Count II.

## II. Motion to Dismiss the Indictment

Miller also moves to dismiss the indictment, arguing that the Government erred by telling the grand jury that his Illinois conviction was a prior felony conviction sufficient to support his § 922(g)(1) charge. Dismissal of the indictment is only appropriate "'if it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations.'" *United States v. Brooks*, 125 F.3d 484, 497 (7th Cir. 1997) (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988)) (marks and citation omitted). The Court can only dismiss an indictment for errors in grand jury proceedings where such errors have prejudiced the defendant. *See Brooks*, 125 F.3d at 497. Prejudice "occurs when the alleged violation had a substantial effect on the grand jury's decision to indict or when it was quite doubtful that the decision to indict was free from that violation's considerable influence." *Id*. at 498.

Here, regardless of whether the Government erred by using Miller's Illinois conviction as the predicate offense for his § 922(g)(1) charge, Miller has not shown that the Government's error would have mattered to the grand jury. As the Government points out, it told the grand jury that Miller had a prior conviction that could support a § 922(g)(1) conviction. The fact that the Government specifically told the grand jury about Miller's Illinois conviction instead of his Wisconsin conviction—which the Court has found can support his § 922(g)(1) conviction—did not prejudice Miller. *See United States v. Vincent*, 416 F.3d 593, 600 (7th Cir. 2005) (finding no prejudice in a fraud case and holding that the "probative value" of the evidence presented to the grand jury did not depend on which rule the defendant violated, but that the defendant violated an ethical rule at all). Thus, the Court denies Miller's Motion to Dismiss the Indictment. *See, e.g.*, *Hester*, 2010 WL

2639807, at *3 n.2 (citation omitted) (denying the defendant's motion to dismiss the indictment where, as here, the affidavit attached to the criminal complaint referred only to an Illinois offense but the initial and superseding indictments both stated that the defendant "was 'previously convicted of a crime punishable by at least a term of imprisonment exceeding one year,' without reference to the jurisdiction of the predicate felony").

### III. Motion Objecting to Career Offender Status

Finally, Miller objects to the PSR, arguing that *Buchmeier* precludes a finding that he is a career offender under §4B1.1 of the Guidelines. Section 4B1.1 provides that a defendant is a career offender if (1) he as at least eighteen years old at the time he committed the offense of conviction; (2) the offense of conviction is a felony that is either "a crime of violence or a controlled substance offense"; and (3) the defendant has at least two prior felony convictions of either "a crime of violence or a controlled substance offense." United States Sentence Commission, *Guidelines Manual*, §4B1.1(a) (Nov. 2009). Miller argues that after *Buchmeier*, neither his Illinois conviction nor his Wisconsin conviction qualifies as a "controlled substance offense," precluding a finding that he is a career offender.

Unlike the definition of "crime punishable by imprisonment for a term exceeding one year" in § 921(a)(20), the definitions of "prior felony conviction" and "controlled substance offense" in §4B1.2 (Definition of Terms Used in Section 4B1.1) do not carve out exceptions for convictions for which the defendant has had his civil rights restored without a provision expressly informing the defendant of his firearm disability. *Compare* 18 U.S.C. § 921(a)(20) (definition of "crime punishable by imprisonment for a term exceeding one year" for purposes of Title 18, Chapter 44, United States Code (Firearms)) *with* USSG §4B1.2(b) (definition of "controlled substance offense");

12

4B1.2, comment. (n.1) (definition of "prior felony conviction"). Nor do the definitions in §4B1.2 rely on or reference the definition of "crime punishable by imprisonment for a term exceeding one year" in § 921(a)(20).

Instead, the United States Sentencing Commission has adopted its own method for counting convictions for which a defendant has been granted a pardon or restoration of rights. The Guidelines specifically state that sentences resulting from convictions in which the defendant had his civil rights restored are to be counted. *See* USSG §4A1.2, comment. (n.10) (recognizing that many jurisdictions have procedures that set aside or pardon defendants "for reasons unrelated to innocence or errors of law, *e.g.*, in order to restore civil rights" and that "[s]entences resulting from such convictions are to be counted"). Miller's receipt of a restoration of rights notice has no bearing on whether he is a career offender under the Guidelines. *See, e.g.*, *United States v. Parnell*, 524 F.3d 166, 170 (2d Cir. 2008) (holding that where the statutory language in § 921(a)(20) "is inconsistent with the plain language of the relevant Guideline," it is not "persuasive for interpreting the Guidelines or appropriate to import it into the Guidelines"). Therefore, Miller's prior convictions in Illinois and Wisconsin both count for career offender purposes.

## CONCLUSION AND ORDER

For the reasons stated, Miller's Motions to Vacate the Verdict as to Count II and to Dismiss the Indictment are Denied. Miller's Objection to Career Offender Status is overruled. The parties shall appear for a status on 12/15/2010 at 9:00 a.m. to set a sentencing date.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: December 1, 2010